```
              IN THE UNITED STATES DISTRICT COURT FOR
                   THE EASTERN DISTRICT OF VIRGINIA
                         Alexandria, Virginia


MUELLER SPORTS MEDICINE, INC. )
                              )
     Plaintiff,               )
                              )
     v.                       )      1:00cv1993 (LMB)
                              )
STEPHEN COMISKEY              )
                              )
     Defendant.               )
```

MEMORANDUM OPINION

Before the Court is plaintiff's Motion to Enforce Settlement Agreement. For the reasons stated below, the Court finds that the doctrine of laches bars plaintiff from pursuing its claims that defendant has breached the Settlement Agreement. As plaintiff has not provided any meritorious grounds for relief, plaintiff's motion will be denied.

## BACKGROUND

Plaintiff Mueller Sports Medicine (Mueller), a Wisconsin corporation which sells specialized sports equipment, owns U.S. Patent No. 4,719,909 ('909 patent) and, under that patent, sells anti-glare strips using the product name "No Glare Strips." On August 1, 2000, defendant Stephen Comiskey (Comiskey), a resident of the District of Columbia, was issued U.S. Patent No. 6,096,154 ('154 patent) for a method and product to reduce glare while communicating messages through the shape of the anti-glare material. On August 9, 2000, defendant informed plaintiff that he thought plaintiff's "No

Glare Strips" infringed his '154 patent. On November 30, 2000, Mueller filed a two count complaint seeking a declaration that the '154 patent was invalid and unenforceable and that Comiskey had violated the Lanham Act. Comiskey filed a counterclaim alleging that plaintiff's "No Glare Strips" infringed his '154 patent.

That litigation was resolved by a Settlement Agreement (Agreement) signed on April 27, 2001, which is the subject of the plaintiff's Motion to Enforce Settlement Agreement. As part of the Agreement, plaintiff paid defendant $80,000 for a non-exclusive license to market specified "Licensed Products," as well as for an option to purchase the exclusive right to market these products. Licensed Products were defined as under-eye light-absorbing devices utilizing a replaceable sheet material containing words or symbols and attachable by a pressure sensitive adhesive, as well as any products that fall within the claims of plaintiff's '909 patent. According to Paragraph 3.3 of the Agreement, the option period during which plaintiff could exercise this right to purchase an exclusive license ended:

> 60 days after COMISKEY notifies MUELLER in writing of (a) the issuance of a patent from COMISKEY'S patent application Serial No. 09/521,856 or any continuation or divisional thereof, or (b) COMISKEY'S decision not to pursue claims covering the LICENSED PRODUCTS in any patent applications for which the benefit of the filing date of patent application Serial No. 08/240,985 can be claimed and for which no patent has issued, whichever is later.

To exercise its option, plaintiff needed to inform defendant in a timely manner of its intent to do so and, within five days

2

thereafter, tender an initial check for $50,000, followed by annual payments of the same amount.

Under Paragraph 4.1 of the Agreement, Comiskey agreed to keep Mueller informed of the status of patent application No. 09/521,856 ('856 application) and provide Mueller with copies of any communications with the Patent and Trademark Office (PTO) relating to patent applications claiming the benefit of the May 11, 1994 filing date of patent application No. 08/240,985 ('985 application).

Pursuant to his obligations under the Agreement, Comiskey wrote letters to plaintiff on October 23, 2001, November 15, 2001, and November 30, 2001, in which he forwarded numerous documents and submissions to the PTO related to the '856 patent application. Several weeks later, in a letter dated February 12, 2002, defendant notified plaintiff that the '856 application would issue as a patent on February 26, 2002. Defendant added that he "is now willing and able to grant the exclusive license" specified in the Agreement. Defendant followed with a letter on February 26, 2002, informing plaintiff that the '856 application had issued that day as U.S. Patent No. 6,350,338 ('338 patent). Plaintiff did not respond to these letters.

In a letter dated April 29, 2002 (April 29 letter), Comiskey advised Mueller that he considered the option period in which Mueller could have acquired an exclusive license to have expired. Defendant wrote that his letters of February 12 and 26, 2002, satisfied Paragraph 3.3(a) and that because he

"has pursued claims covering the LICENSED PRODUCTS in the application that issued as U.S. Pat. No. 6,350,338, Paragraph 3.3(b) does not apply." Defendant then stated that the option period expired on April 20, 2002, sixty days after February 19, 2002, the date on which plaintiff received the February 12 letter. With the option period terminated, defendant wrote that he was:

> free to move forward with his current plans to market and license products covered by the Agreement's definition of LICENSED PRODUCTS, subject to a non-exclusive license to MUELLER.

Plaintiff did not object or in any other respect respond to this letter or those mailed in the preceding months, and has provided no reason for its silence.

Nearly two and a half years later, in a letter dated September 3, 2004, Mueller asserted for the first time that defendant had failed to inform it, pursuant to Paragraph 4.1 of the Settlement Agreement, of a patent application Comiskey filed on December 18, 2001, which claimed to be a division of the '856 application and related to the '985 application. Plaintiff stated that it had only recently discovered this patent application, No. 2002/0040757 ('757 application), and that, contrary to defendant's April 29 letter, the option period therefore remains open.

Plaintiff subsequently filed the Motion to Enforce Settlement Agreement at issue, seeking a declaration that defendant has violated the Agreement by failing to keep plaintiff informed of communications related to the '757

4

application, that the option period remains open, and that Licensed Products include decals.  Finally, plaintiff moves for an order requiring that defendant provide it with information regarding any licensing agreements that defendant entered into with third-parties involving the '154 patent, the '338 patent, and a third patent.

**DISCUSSION**

Mueller argues in its motion that (1) because defendant's '757 application is a division of the '856 application and its claims cover Licensed Products, neither Paragraph 3.3(a) nor 3.3(b) have been satisfied and, consequently, the option period remains open, (2) defendant's failure to provide Mueller with copies of his communications with the PTO concerning the '757 application breached Paragraph 4.1 of the Agreement, and (3) Licensed Products, as defined by the Agreement, include decals. Comiskey responds that the doctrine of laches bars plaintiff from arguing that Paragraph 3.3 remains unsatisfied.  Moreover, defendant argues that Paragraph 3.3 was satisfied because plaintiff misreads Paragraph 3.3(a) and because, in regard to Paragraph 3.3(b), the '757 application, as a method patent, cannot cover any relevant product claims.[1]  For the reasons stated below, the Court finds that plaintiff is barred by the doctrine of laches from asserting that defendant breached the Settlement Agreement.  As a consequence, the Court need not

---

[1] Although the initial '757 application included three non-method claims, Mueller admits that Comiskey later withdrew those claims from the application.

5

address the merits of Mueller's arguments.

Defendant argues that the doctrine of laches applies because plaintiff waited over two and a half years after defendant advised plaintiff that the option period had expired to claim that the option period remained open.  In that time period, defendant relied on plaintiff's silence and entered into licensing agreements with third-parties.[2]  Plaintiff responds that a laches defense is not available where, as here, the applicable statute of limitations has not run.  Plaintiff also argues that, as a matter of law, its silence following defendant's letters in February and April 2002 did not waive or otherwise estop its right to enforce the Agreement.

To establish a defense under the doctrine of laches, defendant must prove (1) lack of diligence on the part of plaintiff and (2) resulting prejudice to the defendant.  White v. Daniel, 909 F.2d 99, 102 (4th Cir. 1990) (barring an action seeking redistricting under the Voting Rights Act because plaintiffs waited seventeen years after a districting plan was enacted to bring suit).  Lack of diligence exists where a party "'delayed inexcusably or unreasonably in filing suit.'"  Id. (quoting National Wildlife Federation v. Burford, 835 F.2d 305, 318 (D.C. Cir. 1987)).  "An inexcusable or unreasonable delay may occur only after the plaintiff discovers or with reasonable diligence could have discovered the facts giving rise to his

---

[2]  Comiskey has stated in his pleadings that "he has licensed his patented technology subject to Mueller's nonexclusive license," and there is no evidence in the record disputing this statement.  Opp'n at 7.

6

cause of action." Id. Defendant can demonstrate prejudice, the second prong articulated in White, by proving that he detrimentally relied upon plaintiff's conduct. Id. (citing Gull Airborne Instruments, Inc. v. Weinberger, 694 F.2d 838, 844 (D.C. Cir. 1982)). The determination of whether laches applies is a fact-specific determination left to the sound discretion of the trial court. Ward v. Ackroyd, 344 F.Supp. 1202, 1212 (D.Md. 1972) (citing Burnett v. New York Cent. R.R., 380 U.S. 424, 85 S.Ct. 1050, 13 L. Ed. 2d 941 (1965)).

The evidentiary record demonstrates a clear and inexcusable lack of diligence on the part of Mueller after it received Comiskey's April 29 letter.[3] This letter alerted Mueller that it and Comiskey understood the notice necessary to satisfy Paragraph 3.3(a) in significantly different ways and presented a questionable interpretation of Paragraph 3.3(b). In regard to Paragraph 3.3(a), defendant wrote that this condition was satisfied when he notified plaintiff in February 2002 of the issuance of a patent from the '856 application. Plaintiff disagrees with defendant's interpretation and argues that the language of Paragraph 3.3(a) requires that all patents must issue before the option period expires, not just a single patent.[4] The April 29 letter also placed plaintiff on notice

---

[3] Plaintiff does not allege that it did not receive the April 29 letter.

[4] The Court notes for the record that plaintiff's interpretation is wholly inconsistent with the language of Paragraph 3.3(a), which clearly refers to "the issuance of a patent." (Emphasis added).

that defendant apparently had misread Paragraph 3.3(b). The letter stated, "As COMISKEY has pursued claims covering the LICENSED PRODUCTS in the application that issued as U.S. Pat. No. 6,350,338, Paragraph 3.3(b) does not apply." Because Paragraph 3.3(b) requires that Comiskey affirmatively notify Mueller of his "decision not to pursue claims covering the Licensed Products in any patent applications" claiming the benefit of the '985 application's filing date, Comiskey's statement that the issuance of the '338 patent satisfied Paragraph 3.3(b) appears to be an incorrect interpretation of Paragraph 3.3(b). (Emphasis added). That misinterpretation should have been challenged by plaintiff. Instead, by doing nothing, plaintiff essentially acquiesced to defendant's misinterpretation of Paragraph 3.3(b). Lastly, the letter alerted Mueller that, because Comiskey regarded the option period to purchase an exclusive license as closed, Comiskey considered himself free to pursue his "current plans" to market Licensed Products to third-parties.

Such notice that the exclusive option for which plaintiff had bargained had expired based on an interpretation of Paragraph 3.3 that plaintiff contests in this motion, and that the assets at issue likely would be marketed to third-party business competitors, should have caused a reasonable and diligent party to object or, at the very least, confront defendant about the validity of his statements. Plaintiff easily could have responded to defendant's letter; however, the record is devoid of any response by plaintiff to the April 29

letter or those that preceded it.  By not objecting in a timely fashion to defendant's interpretation of Paragraph 3.3 or to defendant's stated plan to enter licensing agreements with third-parties, plaintiff lost the right to pursue such claims years after the fact.

Plaintiff attempts to explain its lack of diligence by asserting that had it known in April 2002 of the '757 application, it would have responded to the April 29 letter. The Court finds this argument disingenuous.[5]  A response by plaintiff to the April 29 letter would likely have either led Comiskey to reveal the '757 application or, if defendant concealed this information, would have provided plaintiff with a basis for equitable relief.  By doing nothing, plaintiff lost its right to seek relief at this late date.

Plaintiff tries to explain its inaction by arguing that it had no duty to respond to defendant's "ex post contract effort to prematurely extort license revenue."  Reply at 10.  This mischaracterizes defendant's communications to plaintiff, a reasonable reading of which provides no evidence of extortion or even heavy-handedness but rather demonstrates an appropriate attempt by defendant to provide plaintiff with notice as

---

[5] Moreover, plaintiff counsel's admitted during oral argument that, even had plaintiff known of the '757 application's existence in the spring of 2002, "there is no question that we wouldn't have taken the license yet[.]"  10/29/04 Tr. at 7. Counsel explained that because of its interpretation that Paragraph 3.3(a) requires notice of all patents, not just a single patent, plaintiff would not consider the option period to expire until, at the earliest, 60 days after it received notice of the issuance of a patent from the '757 application or any other patents related to the '856 application.

9

required by Paragraph 3.3.

Plaintiff also alleges that Virginia's five year statute of limitations for actions alleging breach of a written contract precludes the Court's consideration of laches. That argument fails because "[t]he defendant may show lack of diligence either by proof that the action was not commenced within the period provided by the applicable statute of limitations <u>or by facts otherwise indicating a lack of vigilance</u>." <u>White</u>, 909 F.2d at 102 (citing <u>Giddens v. Isbrandtsen</u>, 355 F.2d 125, 128 (4th Cir. 1966)) (emphasis added). As found above, plaintiff's inaction is undisputed and clearly demonstrates a lack of vigilance.

The Court further finds that defendant reasonably and detrimentally relied upon plaintiff's silence, establishing the second element for a laches defense. A reasonable party in defendant's position, having heard no objection to his declaration that the option period had expired, would consider himself free under the Agreement to market Licensed Products, as defendant has done. By seeking to revive its option to purchase exclusive license rights, plaintiff's motion threatens to nullify defendant's successful efforts to market the Licensed Products to third-parties, a result which would unfairly prejudice defendant's financial interests, as well as those of innocent third-parties.

Because plaintiff inexplicably and unreasonably failed to respond to defendant's letter of April 29 and because defendant and third-parties would be prejudiced by permitting plaintiff

10

to pursue its claims after sleeping on its rights, laches bars plaintiff from seeking any relief for the alleged breaches of the Agreement.  For these reasons, plaintiff's Motion to Enforce Settlement Agreement will be denied by an Order issued with this Memorandum Opinion.

    Entered this 2nd day of August, 2005.

    _____/s/_____
                                     Leonie M. Brinkema
                                     United States District Judge

Alexandria, Virginia